UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| AMANDA S.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:23-cv-00035-SEB-KMB |
| | ) | |
| MARTIN J. O'MALLEY,[2] | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION ON COMPLAINT FOR JUDICIAL REVIEW**

Amanda S. applied for supplemental security income from the Social Security Administration ("SSA") on June 11, 2019, alleging an onset date of June 1, 2018. [Dkt. 8-5 at 2-9.] Her application was denied initially on July 26, 2019, and upon reconsideration on October 30, 2019. [Dkt. 8-3 at 3-25.] Administrative Law Judge Anne Shaughnessy (the "ALJ") conducted a hearing on August 2, 2022. [Dkt. 8-2 at 42-67.] The ALJ issued a decision on August 25, 2022, concluding that Amanda was not entitled to receive disability benefits. [*Id.* at 16-36.] The Appeals Council denied review on December 30, 2022. [*Id.* at 2-4.] Amanda timely filed this civil action under 42 U.S.C. § 1383(c)(3) for review of the Commissioner's decision. [Dkt. 1.] This matter was referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a Report and Recommendation as to the appropriate disposition.

---

[1] To protect the privacy interests of claimants for Social Security benefits, and consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first names and last initials of non-governmental parties in its Social Security judicial review opinions.

[2] Pursuant to Federal Rule of Civil Procedure 25(d), Martin J. O'Malley automatically became the Defendant in this case when he was sworn in as Commissioner of the Social Security Administration on December 20, 2023, replacing Acting Commissioner of the Social Security Administration Kilolo Kijakazi.

## I.  STANDARD OF REVIEW

"The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019).  Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision.  *Stephens*, 888 F.3d at 327.  "[S]ubstantial evidence" is "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'"  *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154).  "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled."  *Stephens*, 888 F.3d at 327.  Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'"  *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)).  "[E]ven under deferential standard of review for social security disability cases, an [ALJ] must provide a logical bridge between the evidence and [the] conclusions."  *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022) (internal quotations omitted).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)).  The ALJ must evaluate the following, in sequence:

2

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id*. The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ's decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

## II. RELEVANT BACKGROUND

Amanda was born in 1973 and was 46 years old on the date her application was filed. [Dkt. 8-2 at 34.] She has a high school education and previously worked as a postal clerk and a gas station clerk.[3] [*Id.*]

The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 416.920(a)(4) and concluded that Amanda was not disabled. [*Id.* at 17-36.] Specifically, the ALJ found as follows:

- At Step One, Amanda had not engaged in substantial gainful activity[4] since June 11, 2019, the application date. [*Id.* at 18.]

- At Step Two, Amanda had the following severe impairments: degenerative disc disorder of the lumbar spine, hypothyroidism, chronic obstructive pulmonary disease (COPD), diabetes mellitus, anxiety, and depression. [*Id.*]

- At Step Three, Amanda did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [*Id.* at 21.]

- At Step Three but before Step Four, Amanda had the RFC "to perform light work as defined in 20 CFR 416.967(b) except she can climb, balance, stoop, kneel, crouch and crawl occasionally. She can understand, remember and carry out simple instructions. She can have occasional interaction with coworkers and supervisors but no interaction with the public." [*Id.* at 23-24.]

- At Step Four, relying on the testimony of the vocational expert ("VE") and considering Amanda's RFC, Amanda was unable to perform any past relevant work. [*Id.* at 34.]

- Proceeding to Step Five, relying on VE testimony and considering Amanda's age, education, and RFC, there were jobs that existed in significant numbers in the national economy that Amanda could have performed through the date of the decision, such as warehouse checker, photocopy machine operator, and merchandise marker. [*Id.* at 34-35.]

---

[3] The relevant evidence of record is set forth in the Parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

[4] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

### III. DISCUSSION

In seeking judicial review, Amanda contends that the ALJ erred in three ways. First, the ALJ erred by rejecting the severity of Amanda's psychiatric symptoms based on "normal" exam findings, the absence of specialized mental health treatment, and notes of "improvement" with medication. [Dkt. 12 at 10.] Second, the ALJ did not address why the RFC does not include restrictions to accommodate Amanda's moderate limitation in concentration, persistence, or pace, and the ALJ did not determine whether Amanda could meet off-task and absenteeism requirements given her mental limitations. [*Id.* at 15.] Third, the ALJ did not explain how the RFC restriction to occasional interaction with coworkers and supervisors adequately addresses Amanda's social interaction limitations. [*Id.* at 19.] The Court will address the issues as necessary to resolve the appeal, beginning with the second issue that Amanda raises because it is dispositive.

#### A. Moderate Limitation in Concentration, Persistence, or Pace

Amanda claims that, despite finding that she had a moderate limitation in her ability to concentrate, persist, or maintain pace due to reported concentration and attention issues, chronic pain impacting sleep, and "brain fog," the ALJ provided no corresponding work-related restrictions in the RFC to accommodate such limitation. [*Id.* at 15-16.] Instead, the RFC only limited Amanda to understanding, remembering, and carrying out simple instructions. [*Id.*] If the ALJ believed that a restriction to simple instructions sufficiently captured Amanda's moderate concentration, persistence, or pace limitation, Amanda argues that the ALJ needed to explain her reasoning for reaching such a conclusion, but the ALJ did not do so. [*Id.* at 16.] According to Amanda, even if a restriction to simple tasks accounts for her concentration issues, it does not address her persistence and pace issues, which are distinct competencies required for competitive employment. [*Id.* at 16-17 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00 (F)(3)(f)(i) (noting that "[t]o do a

5

work-related task, you must be able to . . . concentrate <u>and</u> persist <u>and</u> maintain pace in order to complete the task" and that "[l]imitation in any one of these parts . . . may prevent you from completing a work-related task") (emphasis in original)).]

In response, the Commissioner contends that the ALJ reasonably assessed Amanda's RFC by finding that she could understand, remember, and carry out simple instructions. [Dkt. 14 at 11.] The Commissioner asserts that a rating in the paragraph B criteria does not suggest that a person does or does not have a specific functional restriction, but rather, indicates only a very general level of limitation in a very broad category of functioning. [*Id.* at 12 (citing 20 C.F.R. Pt. 404, Subpt. P, App.1, § 12.00(F)(3)(d) (stating that a rating of the paragraph B criteria "does not necessarily reflect a specific type or number of activities . . . that you have difficulty doing")).] According to the Commissioner, a claimant may have a moderate limitation in one of the criteria—such as maintaining pace—but no limitation in the other criteria, such that a finding of moderate limitation only means that a claimant's "functioning in this area independently, appropriately, and effectively, and on a sustained basis is fair." [*Id.* (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(F)(2)(c)).] In support of his position, the Commissioner also cites a string of cases and claims that the Seventh Circuit Court of Appeals has "affirmed almost every decision where the claimant had a moderate rating in this area and the residual functional limitation included evidence-based limitations." [*Id.* at 12-13.] Thus, the Commissioner claims that the ALJ adequately accounted for the assessed moderate limitation in concentration, persistence, or pace. [*Id.*]

In reply, Amanda maintains that the RFC is devoid of restrictions to accommodate her moderate limitation in concentrating, persisting, or maintaining pace. [Dkt. 15 at 11.] Given her chronic pain, obesity, insomnia, depression, and anxiety, Amanda argues that the ALJ's failure to address her persistence and pace issues warrants remand. [*Id.* at 12.] Amanda further argues that

the string of cases the Commissioner cites in his response brief are not factually applicable to the present case. [*Id.*] The key difference between the Commissioner's cited cases and the present case, according to Amanda, is that the evidence here supports limitations in Amanda's ability to persist and maintain pace. [*Id.* at 13.] Thus, Amanda argues that there is no evidence that a restriction to simple instructions accommodates her limitations given her reports of being able to engage in tasks and pay attention only for a few minutes at a time between lengthy breaks; medical opinion evidence that Amanda's difficulty focusing and auditory hallucinations, among other things, stem from her mood disorder; and reports of Amanda falling asleep during the day, lack of motivation, wanting to give up due to depression, and difficulty following through with treatment. [*Id.* at 13-14.] For these reasons, Amanda contends that remand is required. [*Id.* at 14.]

An ALJ need not use any "magic words" when formulating a claimant's RFC. *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019). However, "the ALJ must explicitly account for all [of] a claimant's limitations in her hypothetical, including limitations in concentration, persistence, or pace, unless the vocational expert has independently reviewed the medical record." *DeCamp v. Berryhill*, 916 F.3d 671, 675 (7th Cir. 2019). "[B]oth the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's symptoms supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). The Seventh Circuit Court of Appeals has routinely cautioned that "someone with problems concentrating might not be able to complete a task consistently over the course of a workday, no matter how simple it may be." *Martin*, 950 F.3d at 373-74.

The Court agrees with Amanda that the ALJ's finding and discussion of a moderate limitation in concentration, persistence, or pace cannot be squared with the RFC's mere restriction to understanding, remembering, and carrying out simple instructions. As an initial matter, there is

no evidence—and the Commissioner does not argue—that the VE in this case reviewed Amanda's medical history, heard testimony about the limitations Amanda argues were omitted from the RFC, or otherwise independently reviewed the medical record. Accordingly, the question for this Court is whether the RFC adequately accounted for Amanda's moderate limitation. *See Varga v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2015) (finding no evidence the VE independently reviewed the record, so "we would expect an adequate hypothetical to include the limitations identified").

As mentioned, the ALJ concluded that "[w]ith regard to concentrating, persisting or maintaining pace, [Amanda] has a moderate limitation." [Dkt. 8-2 at 23.] Expanding on this finding, the ALJ acknowledged that "[Amanda] testified that she has problem[s] with her concentration and attention," has chronic pain that affects her sleep, experiences chronic fatigue and occasional brain fog, and was anxious and guarded at her consultative exam. [*Id.*] Yet the RFC does not contain any restrictions related to concentration, persistence, or pace other than providing that Amanda "can understand, remember, and carry out simple instructions." The Seventh Circuit Court of Appeals has repeatedly explained that a limitation to simple work does not adequately account for a moderate limitation in this area of mental functioning. *See Martin*, 950 F.3d at 374; *Yurt*, 758 F.3d at 858-59 (noting that the Seventh Circuit Court of Appeals has "repeatedly rejected the notion that a hypothetical . . . confining the claimant to simple, routine tasks . . . captures temperamental deficiencies and limitations in concentration, persistence, and pace"). Therefore, the undersigned finds that the ALJ's RFC limitation in this case to simple instructions does not adequately account for Amanda's moderate limitation in concentration, persistence, or pace.

The Commissioner cites a string of sixteen cases in support of his claim that the RFC's limitation to understanding, remembering, and carrying out simple instructions adequately

accounted for Amanda's limitations. But the Commissioner fails to provide any facts, cite specific language from those cases, or provide any analysis of those cases to explain how they allegedly apply to the present case. Rather, the Commissioner conclusively asserts that the Seventh Circuit Court of Appeals has affirmed almost every decision where the claimant had a moderate limitation in concentration, persistence, or pace, and the RFC included "evidence-based" limitations. [Dkt. 14 at 13.] Because the Commissioner did not develop this argument further and it is not the Court's role to do it for the Commissioner, the undersigned finds that the Commissioner has failed to fully develop his argument and it will not be considered further. *See Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 397 (7th Cir. 2000) (finding that "it is not this court's responsibility to research and construct the parties' arguments" where "a party fails to develop the factual basis of a claim") (citations and internal quotation marks omitted). Without any specific argument from the Commissioner explaining how the RFC's restriction to simple instructions is an "evidence-based limitation" that captures Amanda's moderate limitation in concentration, persistence, or pace, the undersigned does not find that the Court should deviate from the Seventh Circuit's well-established precedent that a limitation to simple work does not sufficiently account for a moderate concentration, persistence, or pace limitation.

Moreover, while the Commissioner seems to suggest that a person may have a moderate limitation in concentration but not in pace or persistence and, thus, a limitation to simple work may adequately account for specific concentration limitations, the ALJ did not find Amanda moderately limited only with respect to concentration and not with respect to pace and persistence. Critically, after acknowledging Amanda's concentration and attention issues, the ALJ also noted that Amanda suffers from chronic pain that affects her sleep, chronic fatigue, and brain fog. [Dkt. 8-2 at 23.] In fact, the ALJ's finding that Amanda was "able to drive, do chores, and shop, all of

9

which would require *some* concentration, persistence, *and* pace" signals that the ALJ considered all three categories of functioning in finding her moderately limited in all of those areas. [*Id.* at 23 (emphasis added).] Thus, even if the Court were to find that the RFC adequately accounted for Amanda's limitations with concentration, it cannot find that it accounts for her apparent limitations with persistence and pace. *See Martin*, 950 F.3d at 374; *Yurt*, 758 F.3d at 858-59.

Additionally, although the Commissioner argues that a rating in this area of mental functioning does not necessarily mean that a claimant requires a specific functional restriction, the ALJ has a duty to "explain the outcome adequately." *See Lothridge v. Saul*, 984 F.3d 1227, 1234 (7th Cir. 2021). But here, the decision is "internally inconsistent" and therefore fails to build a logical bridge between the evidence and the result, as the ALJ found Amanda moderately limited in concentration, persistence, or pace and then assessed an RFC restriction that the Seventh Circuit Court of Appeals has expressly held does not adequately account for concentration, persistence, or pace limitations. *Id.* In light of this precedent, the ALJ's failure to explain how she apparently believed that a limitation to simple instructions accounted for Amanda's moderate limitation, and evidence Amanda has pointed to that suggests difficulties with concentration, persistence, and pace, the undersigned finds that the RFC in this case was insufficient.

Accordingly, the undersigned recommends that the District Judge remand this case because the RFC does not adequately account for Amanda's moderate limitation in concentration, persistence, or pace. *See Crump*, 932 F.3d at 57 (explaining that "[w]hen the ALJ supplies a deficient basis for the VE to evaluate the claimant's impairments, this error necessarily calls into doubt the VE's ensuing assessment of available jobs"); *Winstead v. Berryhill*, 923 F.3d 472, 477 (7th Cir. 2019) ("employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of

concentration, persistence and pace, and thus, alone, are insufficient to present the claimant's limitations in this area") (internal quotation marks omitted).

### B.  Other Arguments

The undersigned will very briefly address Amanda's other arguments and explain why she finds that those arguments would not require remand.

First, Amanda argues that the ALJ erred by rejecting the severity of her psychiatric symptoms based on "normal" exam findings, the absence of specialized mental health treatment, and notes of "improvement" with medication.  [Dkt. 12 at 10.]   After reviewing the Parties' arguments and the record, the undersigned does not find that the ALJ committed reversible error in evaluating Amanda's subjective symptoms.  Contrary to Amanda's argument, the ALJ did not solely consider the objective medical evidence, but rather, also reasonably considered other regulatory factors such as Amanda's treatment, daily activities, and the findings and opinions from multiple medical professionals.  Amanda further claims that the ALJ erred by considering that she did not seek "psychological/psychiatric treatment at all outside of her primary care," but simply noting that she did not seek specialized treatment does not constitute error, and the undersigned concludes that the ALJ adequately addressed her other examinations performed by medical professionals, including a referral for further neurocognitive testing.  [*See* dkt. 8-2 at 28, 31.]

Second, Amanda argues that the ALJ did not explain how the RFC restriction to occasional interaction with coworkers and supervisors adequately addressed Amanda's social interaction limitations.  [Dkt. 12 at 19.]  Amanda criticizes the ALJ for considering that she denied anxiety and depression at an emergency room visit, as "there is no reason to believe that emergency medicine providers closely examined Plaintiff's *mental* impairments during treatment for *physical* complaints."  [Dkt. 12 at 13 (emphasis in original) (citing *Wilder v. Chater*, 64 F.3d 335, 337 (7th

11

Cir. 1995)).] The undersigned generally agrees with Amanda's assertion that an emergency room record for a physical ailment may not shed much light on a claimant's mental condition; however, the medical record the ALJ cited in support of her assertion here does contain a finding from the treating physician that Amanda had "no anxiety, or depression." [Dkt. 8-7 at 92.] Therefore, the undersigned does not find that the ALJ's observation that "during her emergency room visits in 2020, she generally denied having depression or anxiety" would warrant remand. [Dkt. 8-2 at 31.]

Moreover, the fact that the ALJ considered Amanda's reporting in June 2019 that her depression and anxiety had improved 50 to 60 percent also does not require remand because the ALJ adequately considered other evidence, including that Amanda had "persistent depression and anxiety symptoms despite medications," reported that her "anxiety gets so bad that she gets physically ill," and reported in December 2018 to her primary care physician that her anxiety and depression problems had worsened. [*Id.* at 25-26, 33.] The ALJ also considered Dr. Nayak's July 2022 finding that Amanda's "mood disorder" caused her cognitive issues. [*Id.* at 28.] Overall, the undersigned finds that the ALJ did not single out the June 2019 notation of 50-60% improvement or "cherry pick" any other evidence of improvement to paint a picture that Amanda did not have limitations with anxiety and depression.

Likewise, the undersigned does not find that the ALJ erred in limiting Amanda to occasional interaction with coworkers and supervisors. Amanda argues that the ALJ did not explain how such a restriction adequately addresses her social limitation in light of Dr. Kurzhals' opinion that she is moderately limited in her ability to relate to coworkers, supervisors, and the public. [*See* dkt. 8-7 at 137.] But the ALJ expressly considered all aspects of Dr. Kurzhals' opinion, which is generally consistent with the RFC's limitation to occasional interaction with coworkers and supervisors but no interaction with the public. Amanda has not cited any medical

12

evidence indicating that she requires greater limitations with respect to interacting with others. For these reasons, the undersigned does not find that these arguments would require remand.

## IV.  CONCLUSION

For the reasons detailed herein, the Magistrate Judge recommends that the District Judge **REVERSE** and **REMAND** the Commissioner's decision finding that Amanda was not disabled. Any objections to this Report and Recommendation must be filed in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P 72(b). The failure to file objections **within 14 days** after service will constitute a waiver of subsequent review absent a showing of good cause for that failure. Counsel should not anticipate any extension of this deadline or any other related briefing deadlines.

**SO RECOMMENDED.**

Date: 1/16/2024

*Kellie M. Barr*

Kellie M. Barr
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email